## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| PUBLIC INTEREST LEGAL FOUNDATION, INC., | Docket No. 22-CV-02865 (FLW-RLS) |
| Plaintiff, | HONORABLE FREDA L. WOLFSON, U.S.D.J. |
| v. | Civil Action |
| TAHESHA WAY, in her official capacity as Secretary of State for the State of New Jersey, | Motion Date: July 18, 2022 |
| Defendant. |  |

---

## DEFENDANT'S BRIEF IN SUPPORT OF
## MOTION TO DISMISS IN LIEU OF ANSWER

---

MATTHEW J. PLATKIN
ACTING ATTORNEY GENERAL OF NEW JERSEY
R.J. Hughes Justice Complex
25 Market Street, P.O. Box 112
Trenton, New Jersey, 08625-0112
(609) 376-2955 (Phone)
Steven.Gleeson@law.njoag.gov

On the Brief:
Steven M. Gleeson
Eric Reid
Deputy Attorneys General

## **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ...................................................................... ii

PRELIMINARY STATEMENT ...............................................................1

PROCEDURAL HISTORY AND STATEMENT OF FACTS .............................2

ARGUMENT ...........................................................................................6

    PLAINTIFF FAILS TO STATE A CLAIM BECAUSE THE DOCUMENT IT
    SEEKS TO BE PRODUCED IS OUTSIDE THE SCOPE OF THE NATIONAL
    VOTER REGISTRATION ACT.........................................................7

CONCLUSION ....................................................................................18

# TABLE OF AUTHORITIES

**Cases**

Anspach v. City of Philadelphia, 503 F.3d 256, 260 (3d Cir. 2007) ........................6

Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) .................................................................6

Bartholomew v. Fishl, 782 F.2d 1148, 1152 (3d Cir. 1986)....................................6

FEC v. Akins, 524 U.S. 11, 21 (1998).....................................................................16

In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1426 (3d Cir. 1997).......6

In re Rockefeller Center Properties, Inc. Sec. Litig., 184 F.3d 280, 287 (3d Cir. 1999)............................................................................................................................6

Morse v. Lower Merion School Dist., 132 F.3d 902, 906 (3d Cir. 1997)................6

Pension Ben. Guar. Corp. v. White Consol. Indus., Inc., 998 F.2d 1192, 1196 (3d Cir. 1993)....................................................................................................................7

Preiser v. Newkirk, 422 U.S. 395, 401 (1975) .......................................................17

Project Vote, Inc. v. Kemp, 208 F.Supp.3d 1320, 1338 (N.D. Ga. 2016)... 13-14, 16

Project Vote/Voting for America, Inc. v. Long, 682 F.3d 331 (4th Cir. 2012) 11, 15

Project Vote/Voting for America, Inc. v. Long, 752 F.Supp.2d 697, 710 (E.D. Va. 2010).........................................................................................................................9

Public Interest Legal Foundation v. Boockvar, 431 F.Supp.3d 553 (M.D. Pa. 2019) ........................................................................................................................ 12, 15

Sutton v. Rasheed, 323 F.3d 236, 248 (3d Cir. 2003) ............................................17

True the Vote v. Hosemann, 43 F.Supp.3d 693, 721 (S.D. Miss. 2014)...... 9, 11, 15

**Other Authorities**

S. Rep. 103-6..........................................................................................................7

**Rules**

Fed. R. Civ. P. 12(b)(6)...........................................................................................6

**Federal Statutes**

52 U.S.C. § 20501(b)(1)-(2) ........................................................................10

52 U.S.C. § 20501(b)(3) ...............................................................................10

52 U.S.C. § 20501(b)(4) ...............................................................................10

52 U.S.C. § 20507 .........................................................................................16

52 U.S.C. § 20507(i) ............................................................................. 7, 9, 17

52 U.S.C. § 20510(b)(1) ..................................................................................4

52 U.S.C. § 20510(c) .......................................................................................5

52 U.S.C. § 21083 .........................................................................................16

**State Statutes**

N.J. Stat. Ann. § 19:31-15 .............................................................................16

N.J. Stat. Ann. § 19:31-16 .............................................................................16

N.J. Stat. Ann. § 19:31-31 ...............................................................................3

N.J. Stat. Ann. § 19:33-1 ...............................................................................17

N.J. Stat. Ann. § 47:1A-1.1 to -13 ........................................................ 2, 5, 17

## PRELIMINARY STATEMENT

Plaintiff Public Interest Legal Foundation, Inc. ("PILF") is not entitled to the Voter Module for New Jersey's Statewide Voter Registration System ("Voter Module") under the National Voter Registration Act of 1993 ("NVRA"), 52 U.S.C. §§ 20501, et seq. The Voter Module is essentially an online instruction manual for the State's Statewide Voter Registration System ("SVRS"), which is the secure official database of registered voters. There is no basis in the statute or any published precedent for the mandatory disclosure of such a technical manual, especially when doing so would pose a risk to the security of the State's election systems.

Plaintiff's entire claim hinges on whether the Voter Module is required to be disclosed under the NVRA. Neither the text nor the legislative purpose of the NVRA, nor any decisional regarding the statute's public disclosure requirements support Plaintiff's theory. Rather, they confirm that the Voter Module is outside the scope of the NVRA.

To begin, the Complaint fails to allege how the software manual for the State's secure voter database falls under the NVRA's definition of a "record[] concerning the implementation of programs and activities conducted for the purpose of ensuring the accuracy and currency of official lists of eligible voters" under the NVRA. 52 U.S.C. § 20507(i)(1). And at its core, the NVRA requires public disclosure of documents that will allow requestors to evaluate whether a state is keeping its voter

1

registrations accurate and current – i.e., whether eligible voters are being registered and whether ineligible voters are being rejected or removed from the rolls. The Voter Module simply does not do that. Rather, it is an instruction manual for authorized users of the SVRS to add, delete, or modify the information contained in the SVRS. It does not contain information about registered voters or information about the policies and procedures for registering voters or removing voters. Instead, disclosure of the Voter Module would put the State's election security at risk by giving a blueprint to bad actors to manipulate the SVRS system.

Because the Voter Module is not a record that assists anyone in evaluating whether New Jersey's voter rolls are accurate or current, it is outside of the scope of the NVRA. The New Jersey Division of Elections ("DOE") had no obligation to produce the Voter Module in response to PILF's request under the NVRA, and thus did not violate the NVRA. Therefore, the Secretary is entitled to dismissal with prejudice.

## **PROCEDURAL HISTORY AND STATEMENT OF FACTS**

On September 21, 2021, Plaintiff PILF, by way of Logan Churchwell, submitted a letter through the Secretary of State Feedback System (the "SOS Feedback System"), which is almost solely used for requests submitted under New Jersey's Open Public Records Act ("OPRA"), N.J. Stat. Ann. § 47:1A-1.1 to -13. Plaintiff requested "[c]opies of all manuals, guidance, instructions, and other written

procedures for identifying, merging, and/or cancelling duplicate voter registration records." Compl., Ex. A (ECF No. 1-2). DOE treated the request as one made pursuant to OPRA, and determined that it maintained three responsive documents: 1) Implementing the National Voter Registration Act of 1993: Requirements, Issues, Approaches, and Examples, 2) the Rutgers Basic County Elections Administration Manual for New Jersey Elections; and 3) the Voter Module for the SVRS. Declaration of Lauren M. Zyriek, D.P.A. ("Zyriek Decl."), ¶¶ 4-5. DOE determined that the Voter Module could not be produced due to security concerns. Id. ¶ 14.

The SVRS is a secure electronic database that serves as the official State repository for the information of every legally registered voter in New Jersey. Id. ¶ 8. It is the official voter registration system for the conduct of all elections in the state. Ibid. The Voter Module details how to take actions to add, modify, or delete voter registration information from the SVRS. Id. ¶ 10. In other words, it is a technical instruction manual for authorized users of the SVRS.[1] Ibid. In part, the Voter Module instructs how to add or remove registered voters from the SVRS. Ibid. While the SVRS contains voter registration information, the Voter Module does not. Id. ¶ 11. Nor does the Voter Module contain the State's policies and procedures as

---

[1] New Jersey's election laws restrict authorized users of the SVRS to only "those executive departments and State agencies so designated by the Secretary of State, each county commissioner of registration, each county and municipal clerk, and individuals under certain circumstances, as provided for by this section." N.J. Stat. Ann. § 19:31-31.

to how to determine whether a voter must be removed from the SVRS. Id. ¶ 12. It simply instructs how to make those changes in the SVRS, once a determination has already been made that such changes need to be entered. Ibid.

On March 25, 2022, DOE responded to Plaintiff's request citing OPRA. Compl., Ex. B (ECF No. 1-3). DOE stated that it was producing the NVRA implementation guide and the Rutgers Manual. Ibid. With regard to the Voter Module, DOE stated that "the documents you seek" are "confidential because its disclosure would expose critical vulnerability within the State's election process." Ibid. Due to human error, the NVRA implementation guide and Rutgers Manual were not produced until May 19, 2022. Zyriek Decl. ¶¶ 15-16.[2]

On April 4, 2022, Plaintiff sent a notice to the Secretary[3] pursuant to 52 U.S.C. § 20510(b)(1), alleging that she was in violation of the public disclosure provision of the NVRA and that it would file suit if the withheld document was not produced

---

[2] The NVRA implementation guide is a publicly-available reference guide created by the National Clearinghouse on Election Administration, Federal Election Commission, in 1994 to describe the requirements of the NVRA, identify important issues to states' implementation of the NVRA and conforming legislation, and to offer examples of forms and procedures for implementing the NVRA. Zyriek Decl. ¶ 6. The Rutgers Manual is a manual created by the Rutgers University Center for Government Services, Division of Continuing Studies, in 2017 for a course in Basic County Elections Administration that summarizes the laws and procedures for elections in New Jersey, including voter registration requirements pursuant to New Jersey's elections laws and the NVRA. Id. ¶ 7.

[3] The Secretary of State is the chief election official of the State. N.J. Stat. Ann. § 52:16A-98(b).

within 20 days.  Compl., Ex. C (ECF No. 1-4).  Plaintiff also announced its intent to seek attorney's fees under 52 U.S.C. § 20510(c).  Ibid.

On May 17, 2022, Plaintiff filed this complaint alleging that the Secretary violated the disclosure provision of the NVRA.  The Complaint contains only a single count, alleging that "[t]he requested records are records within the scope of the NVRA's Public Disclosure Provision."  Compl., ¶ 30 (ECF No. 1).  Plaintiff alleges that by withholding the requested records, the Secretary violated the NVRA's disclosure provision.  Id. at ¶ 38.  It alleges that OPRA is preempted by the disclosure provision of the NVRA.  Id. at ¶ 39.  Plaintiff seeks the following relief:

1.  Declaration that the Secretary violated the public disclosure provision of the NVRA;
2.  Declaration that the NVRA public disclosure provision preempts and supersedes OPRA;
3.  Order that Defendant provide the requested records;
4.  Permanent injunction from the State denying similar requests in the future;
5.  Order that the Secretary pay attorney's fees and costs; and
6.  Grant of further relief the court deems just and proper.

[Compl. at 8.]

The Summons and Complaint were served on the Secretary on May 19, 2022.  The Secretary applied for and received a Clerk's Order extending the date to file a responsive pleading to June 23, 2022.

This Motion to Dismiss follows.

**ARGUMENT**

A complaint may be properly dismissed if it fails to state a claim upon which relief can be granted by the court.  Fed. R. Civ. P. 12(b)(6).  A motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) will be granted when, taking the allegations of the complaint and all reasonable inferences therefrom as true, the plaintiff can prove no set of facts that would entitle him or her to relief.  Bartholomew v. Fishl, 782 F.2d 1148, 1152 (3d Cir. 1986).  A plaintiff's conclusory allegations and legal conclusions are not entitled to an assumption of truth.  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009); see also Anspach v. City of Philadelphia, 503 F.3d 256, 260 (3d Cir. 2007) (quoting Morse v. Lower Merion School Dist., 132 F.3d 902, 906 (3d Cir. 1997) (conclusory allegations or legal conclusions masquerading as factual allegations will not suffice to prevent dismissal)).

Plaintiff's Complaint in this case does not explicitly reference the Voter Module or the SVRS.  However, "a court can consider 'a document *integral to or explicitly relied upon* in the complaint,'" In re Rockefeller Center Properties, Inc. Sec. Litig., 184 F.3d 280, 287 (3d Cir. 1999) (quoting In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1426 (3d Cir. 1997)) (emphasis in original), or "an undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document." Pension Ben. Guar. Corp. v. White Consol. Indus., Inc., 998 F.2d 1192, 1196 (3d Cir. 1993).  The Voter

Module is a document integral to the Complaint because it is the document that DOE said it was withholding from PILF for security concerns, which spurred PILF to file the present litigation.  In lieu of attaching the confidential Voter Module to the present motion to dismiss, DOE filed the above-referenced Zyriek Declaration, which describes the Voter Module.  Thus, this Court may consider the Zyriek Declaration on a motion to dismiss without converting it to a summary judgment motion.

### I.   THE COMPLAINT MUST BE DISMISSED BECAUSE THE VOTER MODULE IS OUTSIDE THE SCOPE OF THE NATIONAL VOTER REGISTRATION ACT'S DISCLOSURE PROVISION.

Plaintiff's claim that the Secretary violated the NVRA disclosure provision by failing to produce a technical manual for the state's secure voter registration system is without merit.  The Voter Module is outside the scope of the NVRA and is not a record required to be publicly disclosed under 52 U.S.C. § 20507(i).  As such, PILF cannot state a claim for relief under the NVRA.

Congress passed the NVRA in response to states that employed "discriminatory and restrictive practices that deter potential voters."  S. Rep. 103-6 at 3 (1993).  It was meant to curb "discriminatory and unfair practices" that "deprive some citizens of their right to vote."  Ibid.  Congress found that "[d]iscriminatory and unfair registration laws and procedures can have a direct and damaging effect on voter participation in elections for Federal office and disproportionately harm

voter participation by various groups, including racial minorities." Id. at 2.  Among

other things, the NVRA would "provide procedures and standards regarding the

maintenance and confirmation of voter rolls to assure that voters' names are

maintained on the rolls so long as they remain eligible to vote in their current

jurisdiction and to assure that voters are not required to re-register except upon a

change of voting address to one outside their current registration jurisdiction."  Ibid.

The stated purposes of the NVRA are as follows:

> (1) to establish procedures that will increase the number of eligible citizens who register to vote in elections for Federal office;
>
> (2) to make it possible for Federal, State, and local governments to implement this chapter in a manner that enhances the participation of eligible citizens as voters in elections for Federal office;
>
> (3) to protect the integrity of the electoral process; and
>
> (4) to ensure that accurate and current voter registration rolls are maintained.
>
> [52 U.S.C. § 20503(b).]

The last stated purpose is the most important and represents "the culmination

of, the fulfillment of the other purposes of the statute.  Those other purposes point

toward increasing voter registration and ensuring that the right to vote is not

disrupted by illegal and improper impediments to registering to vote or to casting a

vote."  Project Vote/Voting for America, Inc. v. Long, 752 F. Supp. 2d 697, 710

(E.D. Va. 2010).   Ultimately, the NVRA was "designed to ensure that eligible applicants in fact are registered and that ineligible registrants are removed from the States' official voter lists."   True the Vote v. Hosemann, 43 F. Supp. 3d 693, 721 (S.D. Miss. 2014).

The NVRA requires public disclosure of "voter registration activities."   52 U.S.C. § 20507(i).  This disclosure provision requires in relevant part that:

> Each State shall maintain for at least 2 years and shall make available for public inspection and, where available, photocopying at a reasonable cost, all records *concerning the implementation of programs and activities* conducted for the purpose of ensuring the accuracy and currency of official lists of eligible voters, except to the extent that such records relate to a declination to register to vote or to the identity of a voter registration agency through which any particular voter is registered.
>
> [52 U.S.C. § 20507(i)(1) (emphasis added).]

Reviewed against the text and purposes of the NVRA, the Voter Module is not within the scope of the NVRA.  To start, Plaintiff's Complaint is devoid of any plausible allegation that the Voter Module is a "record[] concerning the implementation of programs and activities conducted for the purpose of ensuring the accuracy and currency of official lists of eligible voters" under the NVRA.   52 U.S.C. § 20507(i)(1).   And for good reason: the Voter Module is merely an instruction manual for computer software that Plaintiff is not authorized to access. It does not "concern[] the implementation of programs and activities."

9

Moreover, the Voter Module does not pertain to the accuracy or currency of the voter roll in New Jersey and hence is not required to be produced under the disclosure provision of the NVRA. Rather, the Voter Module is an instruction manual only for those who have access to the SVRS to make changes to the SVRS and contains nothing that would further the goals and purposes of the NVRA. See Zyriek Decl. ¶¶ 10-12.

Furthermore, disclosure of the Voter Module would only harm election security, but would not assist Plaintiff in assessing New Jersey's compliance with the NVRA. The Voter Module does not establish procedures to increase voter registration or in any way enhance participation of eligible voters. 52 U.S.C. § 20501(b)(1)-(2). Nor does it ensure accurate and current voter registration rolls. 52 U.S.C. § 20501(b)(4). But publicly disclosing a manual on how to navigate and modify the SVRS risks harm to the integrity of the electoral process in New Jersey; such information in the hands of a bad actor could compromise the SVRS itself. Hence, disclosing the Voter Module would actually be counter to the purposes of the NVRA. 52 U.S.C. § 20501(b)(3).

The State is not aware of any cases that require disclosure of instruction manuals that would risk the security of a state's actual registration system. The few published cases that discuss or interpret the disclosure provision reveal that the NVRA disclosure provision applies to records far different than the Voter Module

10

in dispute here.  They involve records with substantive information about eligible and non-eligible voters, such as voter rolls, voter registration applications, and policies and procedures for identifying and removing ineligible voters from the rolls. None of the cases involve technical instructions for operating a statewide voter registration database similar to the SVRS.

In Hosemann, the court dealt with a request under the NVRA for unredacted "voter rolls, poll books, absentee ballot applications and envelopes, and Federal Post Card Applications." Hosemann, 43 F.Supp.3d at 718.  The court concluded that the voter roll fell under the NVRA's disclosure provision.  Id. at 723.  However, the court held that poll books did not fall under the ambit of the NVRA because they are "only partial lists of eligible voters" and thus "not records that are reviewed to ensure the accuracy and currency of 'official lists of eligible voters.'" Id. at 725.  Likewise, the court held that absentee ballot applications and absentee ballot envelopes "neither concern voter registration nor are records concerning a program or activity to ensure the accuracy and currency of the voter roll." Id. at 727.  And in Project Vote/Voting for America, Inc. v. Long, 682 F.3d 331 (4th Cir. 2012), the Fourth Circuit considered whether the NVRA required disclosure of voter registration applications.  The Fourth Circuit said the NVRA did require such disclosure, noting that "reviewing voter registration applications keeps official voter lists both 'accurate' - free from error - and 'current' - most recent." Ibid.

Unlike in <u>Hosemann</u> and <u>Long</u>, in this case, Plaintiff in this case is not seeking substantive voter information like the voter roll or voter registration applications.[4] It is seeking the technical manual that provides instructions for how to operate the state's secure voter registration system itself.  Thus, these cases do not support Plaintiff's claim.

Other cases that Plaintiff refers to in its Complaint also are inapposite.  At issue in <u>Public Interest Legal Foundation v. Boockvar</u>, 431 F. Supp. 3d 553 (M.D. Pa. 2019) were efforts by the Pennsylvania Department of State to identify and remove noncitizens who were mistakenly registered to vote.  There was no dispute that such an effort was a "program[] or activit[y] conducted for the purpose of ensuring the accuracy and currency of official lists of eligible voters," 52 U.S.C. § 20507(i)(1); rather, the case boiled down to whether the NVRA was referencing only "records that relate to programs created to remove registrants who have died or changed their residence."  <u>Boockvar</u>, 431 F. Supp. 3d at 560.  Importantly, the Pennsylvania Department of State acknowledged that it was engaging in "an intense

_____

[4] DOE has provided PILF with voter lists twice in the last two years upon PILF's request.  Zyriek Decl. ¶¶ 17-18.  On March 1, 2021, DOE provided PILF with a link to what was then the most-current SVRS voter list.  <u>Id.</u> ¶ 17.  On March 8, 2022, DOE again provided PILF the most-current SVRS voter list.  <u>Id.</u> ¶ 18.  In its Complaint, Plaintiff states that DOE denied "the requested voter list maintenance records."  Complaint, ¶ 33 (ECF No. 1).  However, Plaintiff did not request and DOE did not deny any request for voter list maintenance records.  Compl., Exs. A, B (ECF Nos. 1-2, 1-3).

data analysis process" in response to the error, and had undertaken activities like compiling lists of suspected noncitizen registrations and sending letters to noncitizens suspected of being registered to confirm their eligibility or cancel their registrations.  <u>Id.</u> at 557.  The District Court held that the disclosure provision encompassed more than just one set of programs and activities.  <u>Id.</u> at 559-60.  By contrast, nothing in Plaintiff's Complaint in this case suggests that the Voter Module falls under the NVRA's definition of "record[] concerning the implementation of programs or activities" at all.  The Voter Module itself does not implement any program or activity.  It is merely a technical instruction book.

Similarly, in <u>Project Vote, Inc. v. Kemp</u>, 208 F. Supp. 3d 1320, 1338 (N.D. Ga. 2016), the court considered a records request under the disclosure provision that "generally concern[ed] the State's evaluation and processing of voter registration applications to determine whether applicants should be added to the voter rolls." The court considered several categories of requested records, specifically:

> (1) The date voter registration applications were signed by an applicant.
>
> (2) The date applications were entered into the Database.
>
> (3) Each change in an applicant's voter registration status.
>
> (4) The creation date of Database-generated letters to applicants.

(5) Whether an election official manually, instead of mechanically, changed the status of one or more applicants.

(6) Reasons other than the most recent reason why an applicant was rejected, canceled, or otherwise not added to the voter roll.

(7) The specific reason why applicants, assigned a status reason of "Error," "Hearing," or "Reject," were canceled.

(8) Records reflecting applicants' telephone numbers, if listed on their applications.

(9) Records for canceled applicants with a status reason other than one of the eleven options in the drop-down menu in the Database.

(10) Copies of Database-generated letters sent to applicants.

(11) Records reflecting the date a voter registration application was received by election officials.

(12) The date and disposition of, and any response to, all letters sent to applicants.

(13) Copies of letters, not generated by the Database, that were sent to applicants.

[Id. at 1341-42.]

The court held that the public disclosure provision required production of all but categories (8), (11), and (12). Id. at 1344. Kemp, like the prior cases, merely confirms that the disclosure provision applies to substantive records regarding voter registration, such as voter rolls, registration applications, and investigations to

14

remove ineligible voters.  See Long, 682 F.3d at 331; Boockvar, 431 F. Supp. 3d at 553.  Each case concerned records that would provide the public with *substantive* information that allows it to review and analyze whether eligible voters are registered and whether non-eligible voters are being properly removed.  But the Voter Module does not contain such information.  In fact, poll books and absentee ballots—which contain far more substantive information about voter registration than the Voter Module, which contains no information about actual voters registered in New Jersey—were held as outside the scope of the disclosure provision. Hosemann, 43 F. Supp. 3d at 725-27.  As such, the Voter Module is not the sort of record covered by the disclosure provision of the NVRA.

Simply put, the Voter Module does not contain any information that helps anyone from the public monitor the registration of New Jersey voters or ensure the accuracy or currency of the voter rolls.  It will not provide anyone with information about whether eligible voters are included on New Jersey's voter roll or whether ineligible voters are being removed.  See Hosemann, 43 F.Supp.3d at 721.  Thus, production of the Voter Module does not achieve any of the purposes of the NVRA or the disclosure provision.

Indeed, the NVRA cannot be read to require production of the Voter Module because that would put the NVRA in conflict with the Help America Vote Act of 2002 ("HAVA"), 52 U.S.C. §§ 20901 to 21145.  HAVA, particularly Section 303,

requires that "[t]he appropriate State or local official shall provide adequate technological security measures to prevent the unauthorized access to the computerized [statewide voter registration] list established under this section." 52 U.S.C. § 21083. Since the Voter Module instructs users on how to add, modify, or delete voter registration information from New Jersey's SVRS, restricting access to the Voter Module to only authorized users helps fulfill the requirement of HAVA to provide technological security measures and serves as an important security measure for the SVRS by thwarting any bad actors who might gain unauthorized access to SVRS with the intent to make illegal changes thereto. DOE's failure to keep the Voter Module confidential and secure could compromise the SVRS's technological security measures and potentially put DOE in violation of HAVA. While the court in Kemp noted that Section 303 of HAVA did not conflict with the disclosure provision of the NVRA where disclosure was authorized by the NVRA, 208 F. Supp. 3d at 1347, the Voter Module is not disclosable under the NVRA and thus, it must be kept confidential pursuant to HAVA.

Because the Voter Module is outside the scope of the NVRA, it is not required to be "publicly disclosed pursuant to a statute," FEC v. Akins, 524 U.S. 11, 21 (1998), and Plaintiff is not entitled to the Voter Module under any other federal law. As a result, the Secretary of State has not violated the NVRA. Plaintiff requested "[c]opies of all manuals, guidance, instructions, and other written procedures for

identifying, merging, and/or cancelling duplicate voter registration records." Compl. Ex. A (ECF No. 1-2).  New Jersey law already contains statutes that outline the process for the removal of voters from the SVRS that adheres to the requirements of the NVRA.  See N.J. Stat. Ann. § 19:31-15 (removal of name of registered voter from Statewide voter registration system; change of residence; corrections) and 52 U.S.C. § 20507; see also N.J. Stat. Ann. § 19:31-16 (notification by municipal health officer or officer in charge of death records indicating the voter is deceased) and N.J. Stat. Ann. § 19:33-1 (removal ordered by a judge of the Superior Court of New Jersey).  The DOE also disclosed to Plaintiff two documents that provide further information on the State's process.  Zyriek Decl. ¶¶ 6-7, 16.  Thus, Plaintiff has all records held by the DOE responsive to Plaintiff's request and disclosable under the NVRA.  Zyriek Decl. ¶ 16.  Hence, Plaintiff fails to state a claim for violation of the NVRA.

Lastly, Plaintiff's request for a declaratory judgment that the disclosure provision of the NVRA (52 U.S.C. § 20507(i)) preempts OPRA should be rejected. Compl., ¶ 39 (ECF No. 1).  Because Plaintiff has not shown that it is entitled to the Voter Module under the NVRA, the Court should not reach the question of whether the NVRA preempts state law disclosure rules under OPRA.  Put simply, because the Voter Module does not fall under the scope of the NVRA's disclosure requirement, there is no basis for this Court to examine whether, in a different

17

hypothetical case, the NVRA preempts OPRA.  See Sutton v. Rasheed, 323 F.3d 236, 248 (3d Cir. 2003) ("a federal court has neither the power to render advisory opinions nor to decide questions that cannot affect the rights of litigants in the case before them.") (quoting Preiser v. Newkirk, 422 U.S. 395, 401 (1975)).

## **CONCLUSION**

For the reasons stated more thoroughly above, Secretary of State Tahesha Way, in her official capacity as the New Jersey Secretary of State, respectfully requests that the Complaint be dismissed with prejudice.

Respectfully submitted,

MATTHEW J. PLATKIN
ACTING ATTORNEY GENERAL OF NEW JERSEY

By:   /s/ Steven M. Gleeson_____
Steven M. Gleeson
Deputy Attorney General

Dated: June 23, 2022