**\*NOT FOR PUBLICATION\***

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| PUBLIC INTEREST LEGAL FOUNDATION, INC., | |
| Plaintiff, | Civil Action No. 22-02865 (FLW) |
| v. | **OPINION** |
| TAHESHA WAY, in her official capacity as Secretary of State for the State of New Jersey, | |
| Defendant. | |

**WOLFSON, Chief Judge:**

Plaintiff Public Interest Legal Foundation ("Plaintiff" or the "Foundation") seeks production of certain records, including the Voter Module for the Statewide Voter Registration System, under the National Voter Registration Act ("NVRA"), 52 U.S.C. § 20507. Plaintiff claims that Defendant Tahesha Way, in her official capacity as Secretary of State for the State of New Jersey ("Defendant"), has failed to satisfy the State's disclosure obligations under the NVRA. Presently before the Court, is a motion to dismiss filed by Defendant pursuant to Federal Rule of Civil Procedure 12(b)(6), in which she argues that Plaintiff's Complaint should be dismissed because the Voter Module is not a record that should be disclosed under the NVRA. For the reasons set forth below, Defendant's motion is **GRANTED** as to the Voter Module, but **DENIED** as to other potential documents discussed herein.

## I.   FACTUAL BACKGROUND AND PROCEDURAL HISTORY

### A.   Factual Background

The Court assumes the facts set forth in the Amended Complaint to be true for the purposes of the present motion.

The Foundation is a non-profit, non-partisan, § 501(c)(3) organization that specializes in election and voting rights issues. (Compl., ¶ 5.) On September 21, 2021, the Foundation emailed a letter to the Division of Elections (the "Division") at the New Jersey Secretary of State's office. (*Id.* at ¶ 13.) The letter requested the following records, pursuant to the NVRA's public disclosure provision:

> Copies of all manuals, guidance, instructions, and other written procedures for identifying, merging, and/or cancelling duplicate voter registration records.

(Compl., Ex. A (hereafter, the "Request").) After several extensions of time to respond, the Division denied the Request, in part. (*Id.* at ¶ 15; Compl., Ex. B.) In a letter dated March 25, 2022 (the "Denial Letter"), the Division explained:

> Please be advised that the documents you seek relating to the State of New Jersey's election process is deemed confidential because its disclosure would expose critical vulnerability within the State's election process. *See* N.J.S.A. 47:1A-1.1. … The documents you request detail how the State's election systems function and how to make discrete changes within the systems. If disclosed, this information would create a grave risk to the integrity of New Jersey's election system.

(Compl., Ex. B; Compl., ¶ 16.) Specifically, it is undisputed that Defendant identified three responsive documents: (1) Implementing the National Voter Registration Act of 1993: Requirements, Issues, Approaches, and Examples; (2) the Rutgers Basic County Elections Administration Manual for New Jersey Elections; and (3) the Voter Module for the Statewide Voter Registration System ("SVRS").[1] (*See* Declaration of Lauren M. Zyriek, D.P.A. ("Zyriek

---

[1]   It is not disputed that the NVRA implementation guide is a "reference guide created by the National

Decl.") in Support of Defendant's Motion to Dismiss), ¶¶ 4-5.) The Division purportedly determined that the Voter Module could not be produced due to security concerns. (*Id.* ¶ 14.) While the Division claimed it was providing the NVRA implementation guide and the Rutgers Manual, the Foundation alleges that neither document was attached to the Denial Letter. (Compl., ¶ 17.) Plaintiff acknowledges, however, that these two documents were eventually provided by the Division on May 19, 2022.[2]

On April 4, 2022, the Foundation sent a notice to the Secretary of State, as the chief election official for the State of New Jersey, pursuant to 52 U.S.C. § 20510(b)(1), alleging that she was in violation of the public disclosure provision of the NVRA and that it would file suit if the violations were not cured within twenty days. (Compl., Ex. C.)

On May 17, 2022, Plaintiff filed the operative Complaint, alleging that the Secretary violated the disclosure provision of the NVRA by not providing records responsive to the Foundation's request. (Compl., ¶ 30, 38.) The Complaint further claims that OPRA is preempted by the disclosure provision of the NVRA. (*Id.* at ¶ 39.)

On June 23, 2022, Defendant filed the instant motion to dismiss in lieu of filing an Answer. (ECF No. 10.) On July 19, 2022, the Foundation opposed Defendant's motion, and Defendant filed a reply on August 8, 2022. (ECF Nos. 16 and 19.)

---

Clearinghouse on Election Administration, Federal Election Commission, in 1994 to describe the requirements of the NVRA, identify important issues to states' implementation of the NVRA and conforming legislation, and to offer examples of forms and procedures for implementing the NVRA." (Zyriek Decl., ¶ 6.) The Rutgers Manual regarding New Jersey Elections is a "manual created by the Rutgers University Center for Government Services, Division of Continuing Studies, in 2017 for a course in Basic County Elections Administration that summarizes the laws and procedures for elections in New Jersey, including voter registration requirements pursuant to New Jersey's elections laws, N.J. Stat. Ann. §§ 19:1-1 to 19:63-31 (Title 19), and the NVRA." (*Id.* at ¶ 7.)

[2]    According to the Division, the production of the NVRA implementation guide and the Rutgers Manual were delayed because of human error. (Zyriek Decl., ¶¶ 15-16.) Plaintiff does not dispute this claim.

## II.   <u>LEGAL STANDARD</u>

Federal Rule of Civil Procedure 12(b)(6) provides that a court may dismiss a claim "for failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). On a motion to dismiss for failure to state a claim, the moving party "bears the burden of showing that no claim has been presented." *Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005) (citing *Kehr Packages, Inc. v. Fidelcor, Inc.*, 926 F.2d 1406, 1409 (3d Cir. 1991)); *Haney v. USA Gymnastics, Inc.*, No. 21-07213, 2022 WL 909871, at *2 (D.N.J. Mar. 29, 2022). When reviewing a motion to dismiss for failure to state a claim, courts first separate the factual and legal elements of the claims, and accept all of the well-pleaded facts as true. *See Fowler v. UPMC Shadyside*, 578 F.3d 203, 210–11 (3d Cir. 2009). While Federal Rule of Civil Procedure 8(a)(2) does not require that a complaint contain detailed factual allegations, "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citation omitted). Thus, to survive a Rule 12(b)(6) motion to dismiss, the complaint must contain sufficient factual allegations to raise a plaintiff's right to relief above the speculative level, so that a claim "is plausible on its face." *Id.* at 570; *Phillips v. Cty. of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008) (citation omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). All reasonable inferences must be made in the plaintiff's favor. *See In re Ins. Brokerage Antitrust Litig.*, 618 F.3d 300, 314 (3d Cir. 2010).

## III.   <u>DISCUSSION</u>

### A.   <u>Statutory Framework</u>

At the outset, an overview of the statutory framework is necessary. The NVRA became effective on January 1, 1995. Congress codified the NVRA's intent and purpose in its opening section:

> (1) to establish procedures that will increase the number of eligible citizens who register to vote in elections for Federal office; (2) to make it possible for Federal, State, and local governments to implement this chapter in a manner that enhances the participation of eligible citizens as voters in elections for Federal office; (3) to protect the integrity of the electoral process; and (4) to ensure that accurate and current voter registration rolls are maintained.

52 U.S.C. § 20501(b). States must establish voter registration practices and procedures consistent with these maxims. *See id.* § 20503(a). The NVRA's "primary emphasis is on simplifying the methods for registering to vote in federal elections." *Colon–Marrero v. Velez*, 813 F.3d 1, 9 n. 13 (1st Cir. 2016)). It also seeks to "protect the integrity of the electoral process." *Nearman v. Rosenblum*, 358 Or. 818, 371 P.3d 1186 (2016)).

The NVRA requires, in addition to any other method of voter registration provided under State law, that each State shall establish the following three procedures to register to vote in Federal elections: (1) pursuant to Section 5, "by application made simultaneously with an application for a motor vehicle driver's license...;" (2) pursuant to Section 6, "by mail application...;" and (3) pursuant to Section 7, "by application in person" at a voter registration agency ("VRA"). 52 U.S.C. § 20503(a)(1)–(3).

Section 8 of the NVRA, which is at issue here, is titled "Requirements with respect to administration of voter registration." Section 8 addresses the States' administration of the voter registration lists to "ensure that any eligible voter is registered to vote in an election." *Id.* § 20507(a)(1). It provides a registration deadline for the three registration methods detailed in

Sections 5-7. *Id.* § 20507(a)(1)(A)-(C). To ensure accurate voter registration lists, the State is required to provide notice to applicants regarding the disposition of their application and "provide that the name of a registrant may not be removed from the official list of eligible voters" except "at the request of the registrant[,]" "as provided by state law," and by "a general program that makes a reasonable effort to remove the names of ineligible voters from the official lists of eligible voters" because of death of a registrant or a change in the registrant's residence. *Id.* § 20507(a)(3)-(4).

Section 8 further provides that "[a]ny state program or activity to protect the integrity of the electoral process by ensuring the maintenance of an accurate and current voter registration roll" "shall be uniform, nondiscriminatory, and in compliance with the Voting Rights Act of 1965[,]" and shall not remove "the name of any person...by reason of the person's failure to vote...." *Id.* § 20507(b). Subsections (c), (d), (e) and (f) provide a comprehensive process for considering removal based on change of address and where a registrant shall cast their vote. The process for removal of a voter must be completed "not later than 90 days prior to the date of a primary or general election for Federal office...." *Id.* § 20507(c)(2)(A). Subsection (g) of Section 8 details the process for advising election officials of Federal convictions.

Critically, the final substantive provision of Section 8 is subsection (i), entitled "Public disclosure of voter registration activities." Subsection (i) provides:

(1) Each State shall maintain for at least 2 years and shall make available for public inspection and, where available, photocopying at a reasonable cost, all records concerning the implementation of programs and activities conducted for the purpose of ensuring the accuracy and currency of official lists of eligible voters, except to the extent that such records relate to a declination to register to vote or to the identity of a voter registration agency through which any particular voter is registered.

(2) The records maintained pursuant to paragraph (1) shall include lists of the names and addresses of all persons to whom notices described in subsection (d)(2) are

sent, and information concerning whether or not each such person has responded to
the notice as of the date that inspection of the records is made.

*Id.* § 20507(i).

### B. <u>Disclosure of the Voter Module</u>

On this motion, Defendant argues that the Complaint should be dismissed because the

Voter Module is not a record pursuant to the NVRA, and therefore, it is outside the scope of the

disclosure provision. According to Defendant, Plaintiff's Complaint is "devoid of any plausible

allegation that the Voter Module is a 'record[] concerning the implementation of programs and

activities conducted for the purpose of ensuring the accuracy and currency of official lists of

eligible voters' under the NVRA." (Def. Mov. Br., 9) (citing 52 U.S.C. § 20507(i)(1)). In that

regard, Defendant asserts that the Voter Module does not pertain to the accuracy or currency of

the voter roll in New Jersey, nor does it establish procedures to increase voter registration or in

any way enhance participation of eligible voters. (*Id.* at 15.) Rather, Defendant submits that the

Voter Module is "merely an instruction manual for computer software that Plaintiff is not

authorized to access," and as such, it does not "concern[] the implementation of programs and

activities." (*Id.* at 9.) According to Defendant, disclosure of the Voter Module would "only harm

election security," because information on how to navigate and modify the SVRS, in the hands of

a "bad actor," risks the integrity of the electoral process in New Jersey and could compromise the

SVRS itself. (*Id.* at 10.)

In response, Plaintiff argues that the NVRA's words unambiguously require public

inspection of "all records concerning the implementation" of voter list maintenance programs and

activities, and therefore, the requested records are subject to public inspection under the statute's

plain meaning. (Pl. Opp., 1.) Specifically, with respect to the Voter Module, Plaintiff submits that

this "instruction manual," which shows how to "add, delete, or modify the information" contained

in the state's "official database of registered voters," "concerns" the steps or actions taken to keep New Jersey's voter roll accurate. (*Id.*) Thus, according to Plaintiff, the Voter Module "squarely 'concern[s]' a core voter list maintenance activity under 52 U.S.C. § 20507(i)(1)." (*Id.* at 2.)

Before engaging in statutory interpretation to determine whether the Voter Module is, in fact, a record that must be disclosed under the NVRA, I first address the Declaration submitted by Assistant Secretary of State Lauren M. Zyriek in Support of Defendant's motion to dismiss ("Zyriek Declaration"). Ms. Zyriek avers that the SVRS is an electronic database that serves as the official State repository for voter registration information for every legally registered voter in New Jersey. (Zyriek Decl., ¶ 8.) According to Zyriek, the SVRS is the official voter registration system for the conduct of all elections in the state, and access to the SVRS's computer software and database is limited to only those executive departments and State agencies designated by the Secretary of State, each county commissioner of registration, each county and municipal clerk, and individuals under certain circumstances. (*Id.* at ¶ 9.) In that connection, the Voter Module is an instruction manual provided by the SVRS computer software vendor that details the steps an authorized SVRS user must take within the SVRS database to add, modify, or delete voter registration information from the SVRS. (*Id.* at ¶ 10.) Ms. Zyriek further submits that while the SVRS contains voter registration information, the Voter Module does not. (*Id.* at ¶ 11.) Nor does the Voter Module contain any information that would permit anyone to determine whether the SVRS was accurate and current. (*Id.*) In opposition, Plaintiff argues that the Court should not consider the Zyriek Declaration because it is extraneous to the pleadings and presents factual questions that cannot be resolved on a motion to dismiss pursuant to Rule 12(b)(6). (Pl. Opp., 5-10.)

Notwithstanding Plaintiff's position, however, I need not consider the Zyriek Declaration, because I find that no dispute exists as to the nature and contents of the Voter Module.[3] Indeed, not only does Plaintiff not challenge Ms. Zyriek's statements that the Voter Module is a technical manual for authorized users of the SVRS, it argues that her testimony confirms that the Voter Module is subject to disclosure under the NVRA. According to Plaintiff's position, the Voter Module, as described by Ms. Zyriek, is responsive to the Request and should be disclosed.

Thus, the Court turns to the essence of the parties' dispute—the meaning of the phrase "concern the implementation of programs and activities conducted for the purpose of ensuring the accuracy and currency of official lists of eligible voters" in the NVRA's disclosure provision, and, correspondingly, whether the Voter Module is subject to such disclosure. In that connection, I begin with the statutory text to first determine the common and ordinary meaning of the disclosure provision's terms. *Vorchheimer v. Philadelphian Owners Ass'n*, 903 F.3d 100, 105 (3d Cir. 2018) (citing *Artis v. District of Columbia*, 138 S. Ct. 594, 603 (2018)). To do so, the Court applies standard dictionary definitions. *See Yates v. United States*, 135 S. Ct. 1074, 1081-82 (2015); *Vorchheimer*, 903 F.3d at 105.

I find the court's analysis of the disclosure provision's plain meaning in *Pub. Interest Legal Found. v. Boockvar*, 431 F. Supp. 3d 553, 559 (M.D. Pa. 2019), helpful. There, the court found that a "program" is "a schedule or system under which action may be taken towards a desired goal." *Id.* (citing Program, WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY (3d ed. 2002)); *see also* Program, COMPACT OXFORD ENGLISH DICTIONARY (2d ed. 1989). The court also found an "activity" is a "natural or normal function or operation." *Id.* (citing Activity, WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY (3d ed. 2002)); *see*

---

[3]   The only portion of Ms. Zyriek's statements that Plaintiff expressly disputes is the notion that disclosure of the Voter Module could threaten electoral security in the State of New Jersey.

*also* Activity, COMPACT OXFORD ENGLISH DICTIONARY. Applying these definitional terms, the court noted that the disclosure provision "requires states to disclose 'all records concerning the implementation' of a schedule or system designed to serve a specific end, or a particular function or operation, 'conducted for the purpose of ensuring the accuracy and currency of official lists of eligible voters.'" *Id.* (citing 52 U.S.C. § 20507(i)(1)); *see also Project Vote/Voting for Am., Inc. v. Long*, 682 F.3d 331, 335 (4th Cir. 2012); *Project Vote, Inc. v. Kemp*, 208 F. Supp. 3d 1320, 1338 (N.D. Ga. 2016); *True the Vote v. Hosemann*, 43 F. Supp. 3d 693, 719-20 (S.D. Miss. 2014). As for the term "concern," I find that word broadly means "to relate or refer to," while "implementation" means to "fulfill" or "carry out." *Kemp*, 208 F. Supp. 3d at 1337; *see also Hosemann*, 43 F. Supp. 3d at 719.

I acknowledge that courts interpreting the NVRA's disclosure provision have done so broadly, concentrating on the statute's use of the term "*all* records." *See Long*, 682 F.3d at 336 (explaining that "the use of the word 'all' [as a modifier] suggests an expansive meaning") (citation omitted). Although Plaintiff is correct that the NVRA's disclosure provision is broad and does not contain an explicit exemption from disclosure for sensitive information subject to potential abuse, I also find that the term "all records" in the disclosure provision "does not encompass any relevant record from any source whatsoever, but must be read in [context] with the various statutes enacted by Congress …." *Pub. Interest Legal Found., Inc. v. N. Carolina State Bd. of Elections*, 996 F.3d 257, 264 (4th Cir. 2021) (citing *Goodyear Atomic Corp. v. Miller*, 486 U.S. 174, 184-85 (1988)) (explaining that when interpreting statutory provisions, courts "presume that Congress is knowledgeable about existing law pertinent to the legislation it enacts").

First, I note the obvious distinction between the record sought in this case and the records historically sought under the NVRA's disclosure provision. The parties do not dispute that the

Voter Module, which is an instruction manual for computer software, merely provides the technical instruction or mechanics of how an authorized user operates and modifies the SVRS database. Tellingly, Plaintiff does not cite a single decision where technical manuals, technical instructions, or any other comparable documents were subject to the NVRA's disclosure provision. Rather, the cases cited in Plaintiff's opposition brief, and those uncovered in the Court's independent national survey of NVRA case law, demonstrate that the disclosure provision has been applied to voter registration lists, applications for voter registration, and other records related to the accuracy of official lists of eligible voters. *See Long*, 682 F.3d at 331 (applications for voter registration); *N.C. State Bd. of Elections*, 996 F.3d at 266 (records concerning "efforts" to "identify noncitizen registrants"); *Pub. Interest Legal Found., Inc. v. Bellows*, No. 20-00061, 2022 U.S. Dist. LEXIS 38875, at *13-14 (D. Me. Mar. 4, 2022) (statewide voter registration list); *Pub. Interest Legal Found. v. Matthews*, No. 20-3190, 2022 U.S. Dist. LEXIS 40640, at *27 (C.D. Ill. Mar. 8, 2022) (statewide voter registration list); *Judicial Watch, Inc. v. Lamone*, 399 F. Supp. 3d 425, 446 (D. Md. 2019) (county-wide voter registration list); *Pub. Interest Legal Found. v. Bennett*, No. 18-0981, 2019 U.S. Dist. LEXIS 39723, at *2 (S.D. Tex. Feb. 6, 2019), *adopted by Pub. Interest Legal Found., Inc. v. Bennett*, No. 18-00981, 2019 U.S. Dist. LEXIS 38686 (S.D. Tex. Mar. 11, 2019) (records concerning registrants who did not satisfy the citizenship requirements for voter registration).

Indeed, in those cases, courts focused almost exclusively on whether the document at issue "concerns" a "program" or "activity" for purposes of the NVRA. That, however, is not the relevant inquiry, here. In this case, whether the Voter Module is a record required for disclosure under the NVRA turns on the term "implementation," as well as the phrase "for the purpose of ensuring the accuracy and currency of official lists of eligible voters." While Plaintiff argues, in cursory fashion,

that the Voter Module implements a program or activity conducted for the purpose of ensuring the accuracy and currency of the State's official list of eligible voters because it "show[s] officials how to correct or update voter registration records," I disagree with that position. Contrary to Plaintiff's argument, it is not the Voter Module that implements a program to ensure any accuracy with respect to state voter registration records. Rather, it is the <u>authorized user</u> of the SVRS that actually implements the voter list maintenance program and activities. Indeed, with guidance and instructions provided by State election officials, the authorized user—not the Voter Module— determines when an individual is added or removed from the voter list, *i.e.*, determining the accuracy of the official lists of eligible voters. As such, manuals, guidance, instructions, and other written procedures that relate to the <u>authorized user's decision-making and evaluation process</u>, including the NVRA implementation guide and the Rutgers Manual, thus would be disclosable under the NVRA, because those records would likely instruct and guide when, and why, an authorized user identifies, adds, merging, and/or cancels certain voter registration records.[4] However, it follows that the instructions for how to use the actual software or the "key-stroke" processes that the authorized user engages in to input those accuracy decisions is not a "record" subject to disclosure under the NVRA. Put simply, the Voter Module does not pertain to the accuracy or currency of the voter roll in New Jersey.

Second, it is critical that "[s]tatutory text is not reviewed in a vacuum, and definitions are not dispositive." *Boockvar*, 431 F. Supp. 3d at 559 (citing *Yates*, 135 S. Ct. at 1081-82). To that end, I find that this interpretation of the disclosure provision, and the conclusion that the Voter

---

[4]      The Court notes that many of these processes are publicly available, and that the two responsive records provide by the Division, *i.e.*, the NVRA implementation guide and the Rutgers Manual, contain further information related to these processes. *See* N.J.S.A. § 19:31-15 (removal of name of registered voter from Statewide voter registration system; change of residence; corrections); N.J.S.A. § 19:31-16 (notification by municipal health officer or officer in charge of death records indicating the voter is deceased); N.J.S.A. § 19:33-1 (removal ordered by a judge of the Superior Court of New Jersey).

Module is not a record subject to disclosure, comports with other portions of Section 8, furthers the purposes of the NVRA, and complements other statutes enacted by Congress. For example, Section 8 provides that "[a]ny state program or activity to protect the integrity of the electoral process by ensuring the maintenance of an accurate and current voter registration roll," "shall be uniform, **nondiscriminatory**, and in compliance with the Voting Rights Act of 1965[,]" and shall not remove "the name of any person...by reason of the person's failure to vote...." *Id.* § 20507(b) (emphasis added). This portion of Section 8, specifically use of the term "nondiscriminatory," supports the Court's interpretation, because it is the authorized user of the SVRS, and any instructions or guidance that the user considers, that determines what "activities" he or she wants to conduct—be it the lawful or unlawful "adding and removing" of entries from the eligible voter list. *See Gustafson v. Alloyd Co.*, 513 U.S. 561, 568 (1995) (finding that courts have a "duty to construe statutes, not isolated provisions"). And, it certainly cannot be argued that a technical manual, such as the Voter Module, should somehow be nondiscriminatory in nature so it could conform to the requirements of Section 8. To argue otherwise would not make statutory sense. As for the purposes of the NVRA, I stress that the disclosure of the Voter Module—a document that the parties agree contains the technical and mechanical inner-workings of New Jersey's electronic database that serves as the official repository for voter registration information for every legally registered voter in the state—could jeopardize the entire SVRS system, and, in turn, the accuracy and currency of the State's official list of eligible voters. The safeguarding of the electoral process and the security of the local, state, and national elections is an important consideration of the Court in determining the scope of the NVRA.[5] Curiously, given Plaintiff's acknowledgment with respect

---

[5]       In this connection, I also credit Defendant's argument that the NVRA cannot be read to require production of the Voter Module because such an interpretation would conflict with the Help America Vote Act of 2002 ("HAVA"), 52 U.S.C. §§ 20901 to 21145. Specifically, HAVA requires that "[t]he appropriate State or local official shall provide adequate technological security measures to prevent the unauthorized

to the contents of the Voter Module, it remains unclear why, and for what purpose, Plaintiff seeks this document; however, one thing is clear—the Court's conclusion serves to "protect the integrity of the electoral process," and promotes the accuracy of voter registration rolls by ensuring the Voter Module remains only in the hands of authorized, secure users. *Id.* § 20501(b)(3), (4). Similarly, the conclusion that the Voter Module is not a record subject to disclosure does not prevent New Jersey, or other states, from establishing procedures to increase the number of eligible voters, implementing the NVRA, or enhancing voter participation. *Id.* § 20501(b)(1), (2). The Voter Module contains only technical information, not information about whether eligible voters are included on New Jersey's voter roll or whether ineligible voters are being removed. Thus, production of the Voter Module would not achieve any of the purposes of the NVRA or the disclosure provision.

Accordingly, I find that Defendant's position—that the Voter Module is not a record for purposes of disclosure under the NVRA—is sound.[6]

## C.   Disclosure of Other Purported Records

In addition to arguments related to the Voter Module, Plaintiff also appears to oppose dismissal of its Complaint based on Defendant's purported failure to produce other responsive records. (Pl. Opp., 11.) Specifically, Plaintiff highlights that its original request sought "all

---

access to the computerized [statewide voter registration] list established under this section." 52 U.S.C. § 21083. In *Kemp*, 208 F. Supp. 3d at 1347, the court found that HAVA can be read in harmony with the NVRA, but only where disclosure is required by the NVRA. The court reasoned that "while the HAVA requires States to implement technological security measures to prevent unauthorized access to the Database— through, for example, hacking or online attacks—the NVRA authorizes the State to disclose relevant Database records in response to a Section 8(i) request." *Id.* Thus, the court found that "[i]n other words, NVRA disclosure is not "unauthorized" access because it is specifically required." *Id.* Here, the Court has found that disclosure of the Voter Module is not required.

[6]     Because the disclosure provision is unambiguous, the Court need not consult legislative history. *See Exxon Mobil Corp. v. Allapattah Servs., Inc.*, 545 U.S. 546, 568 (2005); *United States v. Kouevi*, 698 F.3d 126, 133 (3d Cir. 2012) (citation omitted).

manuals, guidance, instructions, and other written procedures for identifying, merging, and/or cancelling duplicate voter registration records," and that records responsive to such a request are "wide-ranging." (*Id.*)   According to Plaintiff, these records, which were not provided by Defendant, include "procedural manuals, technical manuals, guidance documents, formal instructions, informal instructions (e.g., an email to or from a county official), and hand-written notes (including notes regarding individual applicant or registrant records)." (*Id.*)

In response, Defendant submits that some of what Plaintiff now seeks (such as email correspondence and hand-written notes), simply was not initially requested. According to Defendant, the issue is whether the State failed to produce records that were responsive to Plaintiff's Request and fall within the scope of the NVRA. In that regard, Defendant explains that the Voter Module was responsive to Plaintiff's request, but is not within the scope of the NVRA, and the other two records, which were also deemed responsive, were disclosed. According to Defendant, "[t]here are no other documents at issue, and Plaintiff has failed to plead facts to the contrary."

At the outset, although Plaintiff identifies these additional, unproduced documents as "procedural manuals, technical manuals, guidance documents, formal instructions, informal instructions (e.g., an email to or from a county official), and hand-written notes (including notes regarding individual applicant or registrant records)," I find that the bulk of these items were considered by Defendant when responding to the Request. Indeed, with respect to "procedural manuals," "technical manuals," "guidance documents," and "formal instructions," Defendant represented that it possessed three responsive documents.[7] As detailed *supra*, while Defendant

---

[7]       It is important to note that while the Complaint's allegations of non-disclosure are broad, Plaintiff does not allege that Defendant has acted with any bad faith or intentionally concealed documents from disclosure, such that the Court should look beyond Defendant's representation that responsive documents to Plaintiff's request have been disclosed.

declined to disclose the Voter Module, it nonetheless provided the NVRA implementation guide and the Rutgers Manual. As such, the only additional documents identified by Plaintiff, for the first time in its briefing, as not having been provided by Defendant are "informal instructions," such as emails to or from county officials, and "hand-written notes."

Having narrowed the scope of these additional documents, it is critical to discuss the record before the Court, beginning with the language of Plaintiff's Request. The Request sought:

> Copies of all manuals, guidance, instructions, and other written procedures for identifying, merging, and/or cancelling duplicate voter registration records.

On March 25, 2022, the Division's official response explained that two documents existed responsive to Plaintiff's request for "[c]opies of all manuals, guidance, instructions, and other written procedures for identifying, merging, and/or cancelling duplicate voter registration records." Those documents, which included the NVRA Implementation guidance document and the Rutgers Manual, were provided. The Division's response also stated that an unnamed document, later identified as the Voter Module, was being withheld as confidential "because its disclosure would expose critical vulnerability within the State's election process." On April 4, 2022, the Foundation sent a notice to Defendant, pursuant to 52 U.S.C. § 20510(b)(1), claiming that she was in violation of the public disclosure provision of the NVRA and that it would file suit if the violations were not cured within the statutorily prescribed timeframe.  Less than two months from the submission of its Request, Plaintiff filed the operative Complaint on May 17, 2022, alleging that Defendant violated the disclosure provision of the NVRA by not providing records responsive to the Foundation's Request. Critically, neither the Request, the April 4th correspondence, nor the Complaint expressly reference informal instructions or hand-written notes. Indeed, the April 4th correspondence, which provides the factual timeline of Plaintiff's Request and the Division's response, specifically stresses the Division's decision to withhold

16

solely the Voter Module. In that regard, the April 4th correspondence states that "[t]he requested records fall within the scope of [the NVRA's] broad disclosure mandate—particularly because the Foundation seeks documents concerning *how* NJSOS ensures the accuracy and currency of official lists of voters." (Compl., Ex. C) (emphasis in original). Based on Plaintiff's emphasis of the word "how," it is clear that the basis for the April 4th correspondence, and the Foundation's threat of legal action, was in direct response to the Division's decision to withhold the Voter Module. Similarly, the Complaint does not indicate any additional documents, but merely alleges that Defendant denied Plaintiff access to "voter list maintenance records." Thus, the Court finds that the entire basis of Plaintiff's lawsuit, prior to its opposition to Defendant's instant motion, was the Division's decision to withhold the Voter Module, not informal instructions and hand-written notes.

However, it now appears that Plaintiff seeks a broader subset of documents that it claims the Division should have provided in response to the Request. With respect to these two remaining categories of documents, the issue is whether the Request could be construed to sufficiently encompass these items or whether Plaintiff is required to submit a second, more specific request to Defendant. In that regard, I find that because informal instructions, including email correspondence, and hand-written notes could concern the procedure and parameters for decision-making related to the accuracy and currency of eligible voter lists, these items can be sufficiently tied to the Request. Based on Defendant's representations in connection with her motion, however, it appears that the Division did not contemplate informal instructions and hand-written notes as being included in the Request when it searched its records. Accordingly, the Court directs Defendant to perform a search of the State's records and produce any informal instructions (such as emails to or from county officials) and hand-written notes related to identifying, merging, and/or

cancelling duplicate voter registration records within 45 days. Should such documents exist, and should Defendant have a legal basis to withhold disclosure of these additional items, such as privilege or that the contents are outside the scope of the NVRA, then it should so respond and provide Plaintiff its basis for withholding the responsive documents within that same 45-day period. To that extent that Plaintiff disagrees with Defendant's basis for withholding the additional documents, it may seek appropriate relief in this matter at that time.

IV.    **CONCLUSION**

For the reasons set forth above, Defendant's motion is **GRANTED** as to the Voter Module, but **DENIED** as to other potential documents discussed herein.


Dated: November 9, 2022                          /s/ Freda L. Wolfson
                                                 Freda L. Wolfson
                                                 U.S. Chief District Judge